Okay, the next argued case is number 16, 1788 in Re Alsabah. Mr. Daugherty Good morning, I'm David Daugherty, and this is my colleague Amir Benia. We represent Sheikha Latifa Alsabah. Sheikha Latifa is a Kuwaiti lady, and she has developed a unique tactile method for teaching Arabic to illiterate blind children. What she's really done, and for the first time, she recognized that these children can't see the language. So what she did seems like a very simple idea. She substituted the sensing or feeling of what the Arabic letter actually looks like. And this is something that has never been done before in the Arabic language. Since you can't see it, you have to use feeling. And she's done this, and it's unique. Never been done before over centuries of teaching Arabic. At least we couldn't find any evidence of it. Does the fact that it hasn't been done before change the analysis as to whether it's still just the application of an abstract idea? Yes, it does. Because if these people need to learn the Arabic language, that's a long felt motivation for an invention. And since it's been out there and never done before, if it was, it has to be new. It's unique. Nobody else has done it. They would have done it if it had been apparent. They did not. Well, is there other than Braille? Is there no other methodology that's ever been shown where other forms of feeling particular shapes of letters or numbers have been done? There has been Braille. There is a reference that says you can print a portion of the letter of the Roman alphabet. But the Arabic language is a lot more complex than the Western languages, at least to me and I'm sure to all of you. To begin, they write it backwards. They write from right to left. Well, in Western languages, we write from left to right and you read it in that direction. This is significant. Where does the last letter come? It comes to the left. And the one thing that the prior art has not done is they haven't taken a single symbol and put it at the end of every word. This means that instead of coming up once every 28 times, one for each letter of the alphabet, it comes up every time a word ends. That way the young or the child sees it frequently, much more frequently than in our way of doing it. I guess I'm still struggling with the notion that I don't have any dispute that this is a clever idea or that what she is proposing is very useful for children that have this disability and are learning the language. But I don't know that that answers the question of whether you are still just implementing an abstract idea. It is not. And the reason it is not is this embossed tail angle inclined to the left. It's unique, but it's spelled out right in front of the individual. She can feel it or he or she can feel the difference. That had not been done before. And it's not abstract. There's just one symbol, a little flag that says this is the end of the word. It's specific. It's precise. It's not abstract. Has she registered this with the Copyright Office? Yes, I've looked into the copyright and we elected. And I'm a patent attorney, basically, and I believe in the patent system. And copyright system is fine, but I'm not a artist. And so it really... But you can have both protections. Yes. Oh, absolutely. You can have both. Under certain circumstances, right? And we chose to emphasize the patent side. Okay, but she also has the copyright protection. Felt and suspenders? I don't believe we ever filed for copyright on this. Okay. This is also a unique case. And the fact that we're relying on two separate cases that were not before the board. Those cases came into being one in May of 2016 and the other, I believe, was December of 2015. Those cases held that there are two cases under 35 U.S.C. that held in favor of Sheikha Latifa. The one is EnFish. EnFish LLC versus Microsoft Corp et al. And the other, Desenfano. I'm not sure of the pronunciation. That's okay. And what we have is this embossed tail angle. It comes at the end of the word and it's inclined to the left. So that is what you focus on as your inventive concept? Yes. And that's not been done before. At least we couldn't find any evidence of it. In Desenfano, they said that you cannot use a general law for obviousness. We don't have a general law. We have a specific shape that is shown and called for in the claim. The gist of our invention is this tail angle. Let me say on the complexity of Arabic. In English, we have uppercase and lowercase letters. In Arabic, you have three cases. If it's the first letter of the word, the middle letter, or the last letter. But instead of using 32 specific last letters, Sheikha Latifa uses one. One little symbol in embossed or raised letter shape. When the blind person is feeling along a page, she's going to have only one letter to indicate the last word. So in your brief, there's a lot of focus on the thickness of the letters as well as the fact that there's a use of 10 characters versus 12. But that's not really what you're focusing on now. You're focusing on this tail. Yes, the tail angle. It's a little angle. And it's something that's never been done before. And it makes it, it means that this blind illiterate child doesn't have to memorize 32 or 28 letter shapes. All she needs to do is look for this little angle inclined to the left. But the record says that the Arabic alphabet has 28 basic shapes, which then vary. So that's not part of the discovery. Is that right? No, but in learning the language, you don't have to remember that there are 28 different shapes of these letters or three separate shapes for these letters because you know there's only one shape that is used to indicate the end of the word. And as the total, and I don't have it because I don't have the, each letter that Sheikha Latifa uses. It's just using once. Anytime they run their hand across the page, if they see this embossed shape angle to the left, they know it's the end of the word. They can forget the other forms of that letter. They only use 32 forms according to her teachings. And that's much more simple. And in the prosecution of the case, there is a declaration by a PhD in education to the fact that that is actually easier to remember. It's also, I think, axiomatic. So we have these two shapes or the one shape. And according to the one decision de Stefano, you can't just say it relates to a single shape or therefore it's abstract. It's not abstract. There's one precise shape. And anyone who reads the claim knows that at the end of each letter, you have this precise shape. And only that. So it simplifies education. It makes it easier for a child who is illiterate and to feel it, even though they can't see it. This has never been done. And it's certainly a meaningful contribution. To be more specific, the embossed tail angle applies knowledge for practical purposes. And in front, they said it was computer software that tells you what to do. In our case, we have a teaching aid that somebody can actually feel the shape of this letter. Not the shape of some other letter or some other language, but they can actually feel what this letter looks like. I guess that's not really correct to say what it looks like, but what for a normal person that it's something that they can see, they can feel. This is something that wasn't done. I don't understand why Arabic has to be so complex. Why you need three different cases instead of two. But that's the way it is, and that's the way it is taught. We have it where it's taught in a new way, and that new way makes it much easier for anyone to learn Arabic. It's equally applicable to adults and to literate people. This simple step of eliminating 50 shapes to memorize, because with the method of claim two, you only have to know 32 shapes. Were there any rejections other than under section 101? Yes, also under section 103. And I believe that it's almost self-evident under 103 because if it's very helpful and nobody's done it for centuries, it was obvious somebody would have done it. And it's not abstract because you can read the claim and it tells you exactly what it is. I refer to it as a flag. Every time you see the little flag, that's the end of the word. I don't see that as being abstract. Okay, let's hear from the office. Thank you. Thank you. Thank you, Mr. Doherty. Thank you. Mr. Hageman. Good morning. May it please the court. The Supreme Court has said that abstract ideas are not patent eligible because they would improperly tie up the building blocks of human ingenuity. Sheikha al-Sabah is seeking a patent on a method and aid of teaching Arabic to the blind. That is the type of idea that the Supreme Court has said should remain in the public domain so that others can build on it. The board correctly applied the ALICE two-step test when it found the claimed inventions ineligible here. And I would just point out that the board specifically recognized that these inventions may have utility, but it said that this is just not something that the Supreme Court envisioned should be eligible for a patent grant. Just so we can make clear what we want to focus on here, as it relates to 103, there was no finding with respect to this tailpiece, right? I believe there was a finding, and the finding was that even if the tailpiece is useful or even if it's something that had never been done in the Arabic language, it is still a piece of punctuation, just like a curve that denotes the beginning of a word in Arabic or a dot that provides vocalization direction to the reader, and essentially that it had very little patentable weight because it's a creature of the language. So in other words, they didn't view it as a limitation in the claim? I guess I'm just trying to decide whether there really is a complete 103 analysis here. There is, and I think the board viewed the claim as a whole, and it viewed every limitation, but it just gave very little weight to the significance of that tail angle. I think why did the board do that? It looked at the specification. It didn't see much that was described in the specification about that tail angle. The board also had the fact that there were other items of punctuation that were claimed and described in the specification that were very sort of routine and had been done in the Arabic language for a long time, and this court's case law, although it does require the board to do an analysis, if it's going to discount a limitation as simply being printed matter, the board is allowed to do that. Okay, getting back to the patentable subject matter, is it your position that teaching tools would never be patentable? It's not the office's position that they're categorically ineligible. The board evaluated the precise claims that were at issue here just like it does with any other invention that comes before it. I do think that in this case, copyright would have been a more appropriate method or species of protection for this sort of concept. But no, it is not the office's position that teaching aids are categorically ineligible. I have a hard time with the fact that you sort of lump the two claims together. I mean, clearly we do have a physical construct with respect to the teaching materials, as opposed to just the method, right? There is. So in Claim 11, it is printed on a substrate, so it could be printed on any surface. But for purposes of Section 101 analysis, the Supreme Court has been clear that simply confining a concept to a particular surface or a particular technological environment isn't enough to transform something that's already, that is clearly abstract in its own right, into something more when it's simply placed on a piece of paper or on a computer-readable medium or something like that. So unless the Court has any further questions, I'm happy to yield the balance of my time. Well, as long as you're here, I do have a question. It does seem, and it's hard to find a better example than this, where when you have an elaborate claim, which goes into a number of technical details, we find that rather than searching for a reference as to all of those details, we come up with an objection that the concept is abstract. And there is something disturbing about that observation. There are a lot of other observations one might make if in fact there is, of the very many points which are included in the claim, there is an arguable inventive concept in one of them, because we know that Section 103 refers to the invention as a whole and not to any particular inventive concept. And this is what's troubling to me about this case and about this claim, because when we get to the point, the inventive concept, there's silence on the part of the examiner. So how does one resolve this discrepancy? One solution is to do a lot more work on the part of the examination court. Is that the only solution? I would disagree with the court that the examiner was silent about the inventive concept. I believe the examiner did and the board adopted specific findings that there was, that after step one, that there was nothing in the specification or otherwise that they could find that imparted anything beyond the abstract idea of teaching Arabic to the blind. But let's say this case doesn't somehow fit the definition of step one, so you don't get beyond step one. So then what? Here there was a rejection under 103, but it was incomplete? Well, I think that I would agree that the office is obligated to do a full analysis, whether it's 101 or 103, and I think that happened here. The inquiries are different, but I believe all the art here does support what the board found. It's something to think about. It is cropping up more and more, it seems to me, and we should put our minds to resolution. Understood, Your Honor. Any more questions? Okay, thank you. The case is taken under submission. Thank you both. All rise.